In the Matter of the Compensation of
Everett S. Webb, Claimant.

Everett S. WEBB,
*Petitioner,*

*v.*

GLENBROOK NICKEL COMPANY
and Liberty Northwest Insurance Company,
*Respondents.*

00-05188; A115842

75 P3d 459

David A. Vinson argued the cause for petitioner. On the opening brief was Edward J. Harri; on the reply brief were Edward J. Harri and David A. Vinson.

David O. Wilson argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Reversing an administrative law judge (ALJ), the Workers' Compensation Board (board) concluded that claimant was not entitled to temporary disability payments for a back injury because no doctor had authorized time loss payments. On judicial review, the case presents only a question of fact, which we review for substantial evidence. ORS 656.298(7); ORS 183.482(8)(c). We affirm.

Claimant sustained a work-related back injury when he fell across a railroad track in 1996. His employer's insurer (insurer) accepted his claim as a disabling back strain and awarded temporary disability benefits. The claim was closed in April 1997. However, claimant continued to experience back pain, and, in January 1998, he sought treatment from Dr. Karasek. An MRI disclosed, among other things, "internal disc disruption." Karasek performed follow-up tests that confirmed his original diagnosis, now more specifically called "annular disruption."[1] A neurosurgeon to whom Karasek referred claimant diagnosed degenerative disc disease; a lumbar fusion was discussed but rejected.

In early September 1998, claimant and Karasek filed a Notice of Claim for Aggravation. Claimant identified the 1996 accident as the "original injury." Karasek authorized time loss and described claimant's "limitations" as follows: "Progression of symptoms to point where neurosurgery may be necessary." Accompanying the form was a letter to Karasek from claimant's attorney identifying claimant's 1996 "lumbosacral strain" as "the accepted condition" on which the aggravation claim was based and containing a series of "check the box" questions. Karasek checked the box indicating that, in his opinion, claimant's current need for treatment was "related to the accepted condition." In the space for "explanation," Karasek wrote, "Worsening pain." Insurer denied the claim. Claimant then asked insurer to accept, as a new medical condition, "severe annular degradation" and an "avulsion fracture." Insurer denied those

---

[1] The annulus is a fibrous ring surrounding the nucleus of the disc.

claims as well. Claimant requested a hearing to challenge the denials.

That hearing occurred in March 2000 and resulted in an order concluding that only the annular degradation (and consequent depression) were compensable. The order required insurer to accept the compensable condition and to pay compensation. Insurer accepted the claim but refused to pay compensation on the theory that (1) compensation is not required unless a doctor has authorized time loss for a compensable condition, and (2) the only authorization for time loss was for the lumbosacral strain, which the ALJ had found was *not* compensable. Insurer, in other words, interpreted claimant's aggravation claim and the accompanying check-the-box letter as the only authorization for time loss and as referring only to the lumbosacral strain. Claimant sought a hearing to challenge insurer's failure to pay temporary disability compensation.

The ALJ at that second hearing rejected insurer's denial and ordered insurer to pay temporary disability benefits. Correctly identifying the dispositive issue as whether the record viewed as a whole contained a physician's time loss authorization for a compensable injury, the ALJ concluded:

"Dr. Karasek's authorization of temporary disability on September 2, 1998 was not based upon a worsening of claimant's accepted lumbosacral strain. * * * Dr. Karasek believed from the first time he examined claimant, in April 1998, that claimant was suffering from L5-S1 internal disc derangement. He quite clearly indicated that he was *not* diagnosing or treating a lumbosacral strain. He said: '[T]here is no evidence that "strain" lasts more than six to eight weeks, and continued pain after injury should be looked in to for other causes.' He later pointed out that: '[T]here is no medical literature which supports the idea that "strain" can be either reliably diagnosed or can lead to chronic pain.' Dr. Karasek continued to diagnose internal disc derangement and performed discography—a test clearly *not* directed toward a strain injury. Treatment included nerve root blocks *targeting the L5-S1 disc*: again, not a treatment directed at musculoskeletal strain. Dr. Karasek referred claimant to Dr. Keiper, a neurosurgeon, for possible surgical treatment of the discogenic condition.

"Contrary to [insurer's] argument, this record makes clear that Dr. Karasek authorized temporary disability not for lumbosacral strain, but for claimant's compensable L5-S1 disc condition. The authorization is effective * * *."

(Internal citations omitted; emphasis in original.) The ALJ also found insurer's refusal to pay benefits to be unreasonable and awarded claimant a 25 percent penalty. ORS 656.382(1). Insurer appealed to the board.

The board reversed. Focusing exclusively on claimant's aggravation claim form and the accompanying check-the-box letter, the board concluded:

"On his September 2, 1998, aggravation claim form, Dr. Karasek authorized temporary disability, noting '[p]rogression of symptoms to point where neurosurgery may be necessary.' Dr. Karasek's accompanying September 2nd concurrence report recites that the accepted condition was 'lumbosacral strain' and contains Dr. Karasek's confirmation that claimant's present need for treatment and disability were related to the 'accepted condition or conditions.' In that report, Dr. Karasek also agreed that there had been a pathological change or worsening in the 'accepted conditions.'

"We conclude that this report establishes that claimant's temporary disability was due to the lumbosacral condition, rather than the L5-S1 disc condition. Because the insurer's denial of the aggravation claim based on the lumbosacral condition was upheld, claimant is not entitled to temporary disability."

(Internal citation omitted.) In a footnote, the board explained:

"We acknowledge the reports the ALJ cited that indicate Dr. Karasek was treating the L5-S1 disc condition, not the lumbosacral strain condition. The fact remains, however, that Dr. Karasek's only express statement on the cause of claimant's disability is contained in the September 2, 1998 concurrence report accompanying the aggravation claim form. In that report, Dr. Karasek unmistakably attributed claimant's disability to the 'accepted condition or conditions.' * * * [T]he accepted condition was listed as 'lumbosacral strain.' "

(Internal citations omitted.) Having reversed the award of benefits, the board also reversed the penalty. On judicial review, claimant seeks reinstatement of the ALJ's award of benefits but not the penalty.

In seeking reversal of the board's finding that no physician authorized time loss, claimant faces a daunting standard of review. "[I]n workers' compensation cases, if there are doctors on both sides of a medical issue, whichever way the Board finds the facts will probably have substantial evidentiary support." *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988). In the present case, there are not doctors on both sides; no doctor states that claimant's condition is related to his compensable annular degradation. The gist of claimant's argument is that the record, including the aggravation claim form, clearly indicate that, when Karasek checked the "yes" box after the question, "Is it your opinion that the cause for need of the present treatment or disability is related to the accepted condition or conditions," he did not pay strict attention to the prior paragraph, in which claimant's counsel had stated, "The accepted condition for this claim is lumbosacral strain." The evidence supporting this assertion, which insurer does not and could not contradict, is that Karasek never treated claimant for a back strain and on several occasions affirmatively opined that claimant's condition could not be related to a back strain. That is certainly a persuasive argument and, had the posture of this case been reversed, with insurer seeking judicial review of a board opinion affirming the ALJ's decision, we could certainly affirm. However, the only statement from any doctor regarding time loss authorization attributes claimant's need for treatment to his accepted condition, and the only accepted condition in existence at the time—an accepted condition explicitly denoted as such immediately above the doctor's statement—was noncompensable. We therefore affirm.[2]

Affirmed.

---

[2] Claimant also assigns error to the board's determination that insurer did not fail to process the claim. Insurer's processing duty, however, occurs only on time loss authorization for a compensable claim, which, we have determined, never occurred here.